UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
NEWPORT NEWS DIVISION

THOMAS W. REYNOLDS,

        **Plaintiff,**

v.                                                    **CIVIL ACTION NO.: 4:21cv41**

MEN'S WELLNESS CENTERS, LLC

and

MARCUS HOWERTON, individually,

        **Defendants.**

---

## COMPLAINT
---

    COMES NOW, the Plaintiff, Thomas W. Reynolds, (hereinafter "Plaintiff"), and files this Complaint under the Fair Labor Standards Act, 29 U.S.C. §§201, *et seq.* (hereinafter "FLSA") against the Defendants Men's Wellness Centers, LLC (hereinafter "MWC") and Marcus Howerton, individually, and states and alleges as follows:

### I. Introduction

    1.    Plaintiff at all times was a non-exempt, salaried employee of Defendants. Defendants required Plaintiff to work numerous overtime hours without payment.

### II. Jurisdiction and Venue

    2.    Jurisdiction to bring this class action on behalf of Plaintiff is vested in this Court by 28 U.S.C. § 1331.

    3.    Defendants operate three men's health clinics located in Newport News, Virginia Beach and Richmond respectively.

4. Defendant MWC's registered agent is located in Virginia Beach.

### III. The Parties

5. Plaintiff is an individual who resides in Hampton, Virginia, which is within this division of the Eastern District of Virginia.

6. Defendant MWC is a Virginia limited liability company.

7. Defendant Marcus Howerton is the owner of the LLC and involved in operations of the company, including hiring, firing and supervising employees and setting the pay and work hours of employees.

### IV. Factual Allegations

8. Plaintiff began work for Defendants in 2015 and he resigned from employment on July 31, 2020.

9. Plaintiff's title at MWC was "Director of Patient Communications."

10. Plaintiff's job during the applicable time period (the three years preceding the filing of this Complaint), was to answer phone calls to MWC from potential patients and schedule their demographic information (name, telephone number(s), address, email address, date of birth, symptoms, etc.) and their appointments in the company database.

11. When other doctor's offices contacted MWC to develop a referral relationship, which was extremely rare, Plaintiff answered the phone and forwarded their contact information to the Director of Operations/Business Development and to the Medical Director of MWC to follow up.

12. At all times material hereto Defendants were the "employer" of Plaintiff within the meaning of 29 U.S.C. § 203(d).

13. Defendant MWC is an enterprise that has employees who are engaged in interstate commerce and handle goods such as medical paraphernalia that have been moved in or produced for interstate commerce. 29 U.S.C. § 203(s)(1)(A)(i); 29 C.F.R. § 776, *et seq*.

14. Defendant MWC does an annual volume of business well in excess of $500,000.00. 29 U.S.C. § 203(s)(1)(A)(ii).

15. Defendant MWC also is engaged in interstate commerce by its use of long distance telephone lines, credit cards from out of state, long distance fax lines, and the procurement of supplies and medicine from out of state.

16. Defendants did not permit Plaintiff to exercise discretion and independent judgment regarding matters of significance at MWC.

17. If questions came up when he was on the telephone with prospective patients (available services and their cost, for example), Defendants directed Plaintiff to refer them to the Director of Operations/Business Development and/or to the Medical Director of MWC, among others, and he did so.

18. Plaintiff had no authority to commit Defendants to any matters with a significant financial impact, and he did not attempt to obligate the company financially.

19. Plaintiff performed mechanical, repetitive and routine work, including data collection and appointment setting concerning prospective patients.

20. Plaintiff has a college degree, but no particular education was required by Defendants for Plaintiff's position.

21. Plaintiff had nothing to do with the management of MWC or its general business operations.

22. Plaintiff did not market. He answered the phone and set up appointments for prospective patients.

23. Plaintiff did not attempt to determine the proper, or even possible, course of treatment for prospective patients.

24. During the three years immediately preceding the filing of this Complaint when Defendants employed him, Plaintiff, by agreement, worked at least 70 hours per week.

25. Generally Plaintiff worked days, evenings and Saturdays at the Newport News clinic, but on Sundays he usually worked from his home.

26. Plaintiff included in his time sheets the hours that he worked at the Newport News clinic and those he worked at home.

27. The directors for and with whom Plaintiff worked, and the other employees at MWC, knew that Plaintiff was regularly working late and working on the weekends.

28. Indeed, in the letter of reference written by the medical director of MWC for Plaintiff, Dr. Papariello said in part in reference to Plaintiff "he worked long hours on a regular basis, over 70 hours per week." See **Exhibit A**.

29. Because Plaintiff never had time to take a vacation, Defendants paid him for three additional months after he resigned.

30. Plaintiff had no obligation to keep a record of the hours he worked, but he did so. His claim for unpaid overtime compensation is based on his records.

31. MWC was legally obligated to keep complete time and payment records for its employees for at least two, and possibly three years, depending on the nature of the work performed by the employee. MWC, upon information and belief, failed to keep accurate records

of the hours worked by Plaintiff. 29 U.S.C. § 211(c); 29 C.F.R. § 516.

32. MWC was required to pay Plaintiff a rate of not less than one and one half times his regular rate after 40 hours of work in a week.  29 U.S.C. § 207; 29 C.F.R. §§ 548 and 778.

33. In addition to a salary, MWC paid Plaintiff periodic bonuses of a few hundred dollars per month which Plaintiff has added to his salary to reach his hourly rate of pay.

34. Plaintiff worked 1,222.5 hours of overtime between April 20, 2018 and December 31, 2018 (8.5 months/37 weeks).

35. Plaintiff worked 1,651 hours of overtime between January 1, 2019 and December 31, 2019.

36. Plaintiff worked 892.5 hours of overtime between January 1, 2020 and July 31, 2020 (7 months/30 weeks).

37. Plaintiff worked all these hours in excess of 40 in a workweek without any compensation.

### V.  COUNT I – Unpaid Overtime and Liquidated Damages

38. Plaintiff restates the above allegations as if set forth at length herein.

39. Plaintiff's unpaid overtime claims are $66,895.2 (1222.5 hours x $54.72 overtime rate) for 8.5 months in 2018; $83,540.60 (1651 hours x $50.60 overtime rate) for 12 months in 2019; and $42,679.35 (892.5 x $47.82 overtime rate) for seven months in 2020.

40. The Defendants knew or should have known of such overtime work for many reasons, including but not limited to the fact that it was frequently discussed by management at MWC.

41. Some discussions involved whether it was a good investment for Plaintiff to work

the additional hours, and it was concluded that MWC benefitted financially.

42. The Defendants also knew about the overtime hours Plaintiff worked from the data he entered, including their knowledge of when during the day he spoke to prospective patients from the computer time stamp.

43. Mr. Howerton often called and texted Plaintiff after normal work hours for updates about bookings.

44. Plaintiff complained periodically to Mr. Howerton and other MWC directors about the long hours he was working and his disproportionately low pay.

45. Defendants lacked a good faith and reasonable belief that their pay practices complied with the FLSA.

46. Defendants knew or showed reckless disregard for the matter whether their conduct was prohibited by the FLSA.

47. Defendants' failure to pay Plaintiff was voluntary, deliberate, intentional, and repeated over a period of about five years.

48. The Defendants' willful violation of the FLSA is also demonstrated by other actions Defendants took to the severe detriment of Plaintiff.

49. Defendants promised to pay Plaintiff $180,000.00 compensation each year, to issue him 1% of the shares of the stock in MWC, to pay him a weekly bonus of 0.09% of gross revenue, and to fly him on Mr. Howerton's jet to New York City for periodic vacations at MWC expense.

50. Defendants made the foregoing four promises repeatedly, and Plaintiff kept working at least 70 hours per week to insure that MWC was successful and could and would

keep its promises.

51. Defendants never performed as agreed.

52. The applicable time period for Plaintiff's claim is thus three years, including the period April 20, 2018 to July 31, 2020.

53. Plaintiff is entitled to an award of liquidated damages in the amount of the overtime compensation due. 29 U.S.C. § 216(b).

54. Liquidated damages can be denied by a court only if the Defendants show they acted with good faith with reasonable grounds to believe they were not violating the FLSA. 29 U.S.C. § 260.

55. Defendants failed to act in good faith with reasonable grounds to believe they were not violating the FLSA.

## VI. COUNT II – Breach of Contract

56. Plaintiff restates the above allegations as if set forth at length herein.

57. Beginning in December 2017, Marcus Howerton on behalf of MWC, informed Plaintiff that it was going to award him 1% of the shares of stock of MWC.

58. Again in 2018, 2019, and as late as Monday April 27, 2020, Howerton stated periodically that he was going to award Plaintiff 1% of the shares of MWC in recognition of his dedication to the Defendants.

59. Mr. Howerton made similar promises to other directors awarding them stock in his company.

60. On Monday April 27, 2020 Howerton on behalf of MWC, stated that the paperwork had been completed and that Plaintiff should receive 1% of the shares of MWC stock

presently.

61. On Tuesday July 21, 2020 on the telephone Howerton on behalf of MWC, again referenced the stock transfer paperwork and boasted that MWC was very profitable and generating $10 million in annual revenue.

62. At a minimum, 1% of the shares of MWC is worth $100,000.00.

63. Notwithstanding Defendants' many promises, and Plaintiff's reliance thereon, neither Howerton nor MWC delivered a stock certificate to Plaintiff as agreed.

## VII. Relief Requested

Plaintiff seeks the following relief for violation of the FLSA under Count I:

    a. Time and a half pay for each hour over 40 in a week for which Plaintiff was not paid by Defendants;

    b. Liquidated damages in a matching amount;

    c. Pre-Judgment interest at the legal rate from the date of the failure to pay each installment of unpaid overtime compensation;

    d. Post-Judgment interest at the legal rate;

    e. Reasonable attorney's fees authorized by the FLSA;

    f. The costs of this action, including expert witness fees, if any; and

    g. Such further relief as the Court deems appropriate.

Plaintiff seeks the following relief for breach of contract under Count II:

    a. An Order compelling Defendants to issue a stock certificate for 1% of the stock of MWC to Plaintiff; or

    b. An award of at least $100,000.00 to Plaintiff in lieu of a 1% interest in

MWC;

    c.    Pre-judgment interest at the legal rate from the date of default;

    d.    Post-judgment interest at the legal rate;

    e.    The costs of this action; and

    f.    Such further relief as the Court deems appropriate.

**TRIAL BY JURY IS DEMANDED.**

                                          Respectfully Submitted,

                                          **THOMAS W. REYNOLDS,**

Date: <u>April 20, 2021</u>                By:   <u>/s/ Christopher C. North</u>
                                                          Of Counsel

Christopher Colt North, (VSB #16955)
The Consumer & Employee Rights Law Firm, P.C.
5629 George Washington Memorial Hwy, Suite D
Yorktown, VA 23692
Phone: (757) 873-1010
Fax:    (757) 873-8375
E-mail: <u>cnorthlaw@aol.com</u>
*Counsel for the Plaintiff*